IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CADENCE PHARMACEUTICALS, INC., SCR PHARMATOP, and MALLINCKRODT IP, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 14-1225-LPS |
| INNOPHARMA LICENSING LLC and INNOPHARMA, INC., | : : : | |
| Defendants. | : | |
| CADENCE PHARMACEUTICALS, INC., SCR PHARMATOP, and MALLINCKRODT IP, | : : : : | |
| Plaintiffs, | : : | C.A. No. 14-1499-LPS |
| v. | : : | |
| AGILA SPECIALTIES INC. and MYLAN LABORATORIES LIMITED, | : : : | |
| Defendants. | : | |

## MEMORANDUM ORDER

At Wilmington this **4th** day of **January, 2017**:

Having reviewed the proposed pretrial order (*see* C.A. No. 14-1225 D.I. 281, 282, 283, 284, 285, 286)[1] ("PTO"), submitted by Cadence Pharmaceuticals, Inc., SCR Pharmatop, and Mallinckrodt IP ("Cadence" or "Plaintiffs"), Innopharma Licensing LLC and Innopharma, Inc.

---

[1] All references to the docket index are to C.A. No. 14-1225.

1

("Innopharma"), and Agila Specialities Inc. and Mylan Laboratories Limited ("Mylan"), the attachments to the PTO, and the other materials referenced herein,

IT IS HEREBY ORDERED that::

1. Cadence's motion *in limine* ("MIL") No. 1 as to Innopharma, to exclude certain noninfringement arguments, is DENIED. Cadence and Innopharma attack each other for having introduced new claim constructions into the case through expert reports and, consequently, the parties have filed a combination of MILs, motions to strike, requests for supplemental claim construction, and discovery dispute letters. In general, the Court has determined that the appropriate course of action under the circumstances is to allow each party to present the case it wishes to present – including whatever has been disclosed in each of the expert reports that have been served – and to determine at an appropriate time if any further claim construction is necessary. For purposes of Cadence's MIL No. 1, it is sufficient to observe that the Court is not persuaded that Innopharma's four purportedly "new" noninfringement theories are "indisputably predicated" on a new construction of "placing under vacuum" or that the *Pennypack* factors favor exclusion of the challenged evidence.[2]

2. Cadence's MIL No. 2 as to Innopharma, to exclude certain noninfringement arguments addressing the doctrine of equivalents, is DENIED, for the same reasons already given with respect to denial of Cadence's MIL No. 1 above.

3. Cadence's MIL No. 3 as to Innopharma, to preclude arguments that "explicitly contradict" discovery responses, is DENIED. Cadence's characterization of the discovery

---

[2]Although Cadence suggests a need to take additional fact discovery, it does not articulate what this discovery would be (or could have been).

responses and their relationship to the trial testimony Cadence seeks to exclude is not persuasive.

4. Cadence's MIL No. 1 as to Mylan, to prohibit Mylan from contending that its method of preparing its proposed product does not infringe because it does not satisfy the "below 2 ppm" limitation of the '218 patent, is GRANTED. Mylan does not identify anywhere in the record that it contested infringement based on this limitation (or disclosed that its expert held this opinion) until it served Dr. Williams' rebuttal report. In light of Mylan's earlier concessions and failure to supplement, this disclosure was untimely (even if it might otherwise be considered proper rebuttal and/or is based on documents that had been timely disclosed). The *Pennypack* factors favor striking the evidence.

5. Cadence's MIL No. 2 as to Mylan, seeking to exclude Mylan's noninfringement defense relating to the "preserving for a prolonged period" limitation, is GRANTED, for essentially the same reasons as given above with respect to Cadence's MIL No. 1 as to Mylan. Mylan's effort to identify where it timely disclosed that it was contesting this limitation (*see* Suppl. Resp. to Interrog. No. 5 at 25) is unavailing, for the reasons argued by Cadence.

6. Cadence's MIL No. 3 as to Mylan, to preclude a "belated claim construction" regarding the '218 patent, is DENIED. The Court will determine, through the procedures discussed in this Order and to be discussed at the pretrial conference, whether additional claim construction is necessary. Regardless, the evidence Cadence challenges by this motion may be presented at trial, and may prove helpful to the Court as finder of fact; in any event, the *Pennypack* factors do not favor exclusion.

7. Innopharma's MIL No. 1, to exclude references to the *Exela* litigation, is DENIED. Cadence does not assert collateral estoppel, issue preclusion, or law of the case, and

the Rule 403 balance does not favor exclusion. All parties are free to cite to the Court's findings in the *Exela* case for any proper purpose and the Court will give them whatever weight, if any, they deserve, recognizing that this is a different case involving different parties, different products, different evidence, and reexamined patents.

8. Innopharma's MIL No. 2, to preclude Cadence's experts from offering testimony inconsistent with the Court's claim construction, is DENIED. The Court is not persuaded that the testimony Innopharma identifies (i.e., Dr. Klibanov's opinions regarding "a free radical scavenger and a free radical antagonist") is a "material alteration" or "reinterpretation" or "sleight of hand modification" of the Court's claim construction as opposed to a permissible "application" of the Court's construction. It follows that the Rule 403 balance does not favor exclusion.

9. Mylan's MIL, to preclude comparison of Mylan's accused product to Plaintiffs' commercial product, is DENIED. To the extent that Plaintiffs' commercial product is an embodiment of one or more claims of the patent(s)-in-suit, a comparison of Mylan's accused product to Plaintiffs' product may be probative of infringement, i.e., "whether the accused products contain each and every limitation of the asserted patent claims, either literally or under the doctrine of equivalents." The Rule 403 balance does not favor exclusion, particularly as Plaintiffs' expert will present an element-by-element comparison of Mylan's accused product and the asserted claims.

10. The Court has reviewed Cadence and Innopharma's four recent discovery dispute letters and associated filings (*see, e.g.*, D.I. 290, 291, 292, 294) and hereby ORDERS:
(i) Plaintiffs' request for leave to serve supplemental expert reports of Hopfenberg, Orr, and

3

Amiji is GRANTED; and (ii) Innopharma's request for leave to serve Cima's supplemental report responding to Plaintiffs' supplemental reports is GRANTED. (*See also* PTO at 24, 26, 28) The Court believes the opinions expressed in each of these reports may prove helpful to it in its fulfilling its responsibility as factfinder. The Court is not entirely convinced by either side's characterization as to which party (Cadence or Innopharma) is responsible for purportedly injecting new claim construction disputes and untimely theories into the case. The most fair, reasonable, and appropriate resolution of the parties' disagreements is to allow the supplemental reports to be part of the case and to determine, according to the procedures set out in this Order and to be discussed at the pretrial conference, whether supplemental claim construction is necessary.

11.     Innopharma's motion to exclude the expert testimony of Dr. Robert Kimmel (D.I. 277) is DENIED. (*See also* D.I. 278, 293) Dr. Kimmel provides relevant, reliable testimony that "fits" the case and will be helpful to the Court as the trier of fact. Dr. Kimmel is a packaging expert whose opinion is pertinent to the infringement issue of whether the process by which Innopharma prepares its accused generic product satisfies the "placing under a vacuum" limitation. Innopharma's criticisms of Dr. Kimmel and his opinions go to the weight to be given to that evidence, not its admissibility.

12.     The Court will not be scheduling a supplemental claim construction hearing. (*See, e.g.*, PTO at 26) Instead, to the extent any party believes there remains a genuine, material dispute with respect to construction of a claim term, the parties shall use some portion of their time at trial to present any evidence and argument they wish in support of their position. The parties shall be prepared to discuss at the pretrial conference tomorrow a schedule for:

(i) identifying which, if any, disputed claim terms must be construed; (ii) each party's proposed construction; (iii) whether, and when, any briefing will be submitted; and (iv) whether any party intends to rely on live testimony as part of its presentation regarding supplemental claim construction.

13. Defendants' proposal at page 18 of the PTO ("The parties need not disclose exhibits for cross-examination . . .") is ADOPTED.

14. Given the issues to be tried – which include infringement, invalidity, and inequitable conduct, in a case involving two patents-in-suit and two separate sets of defendants – the Court allocates to each side a maximum of fifteen (15) hours per side for its trial presentation. The parties' joint request for twenty-one (21) hours per side (PTO at 30-31) is excessive under the circumstances and substantially more time than will be required for both sides to make fair and reasonable presentations of all the evidence and argument the Court will need in order to resolve the disputed issues.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT